WILLIAM L. BYRON *vs.* MINNIE C. O'CONNOR.

Androscoggin.        Opinion February 28, 1931.

*Benjamin Berman,*
*David Berman,*
*Jacob Berman,*
*Edward Berman,* for plaintiff.
*Frank T. Powers,* for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRINGTON, THAXTER, JJ.

STURGIS, J., BARNES, J., DISSENTING.

FARRINGTON, J. The case is before us on general motion and on exceptions to certain instructions given by the presiding Justice in an action of negligence in which a verdict was rendered for the plaintiff.

On January 31, 1929, the plaintiff was driving in his automobile from Lewiston to Augusta. On the surface of the highway, some three miles from Augusta, there was for a little distance a thin coating of ice and snow. The plaintiff's car skidded at this point, on account of a sudden application of brakes to avoid collision with a car just ahead, and stopped in the ditch headed back toward Lewiston, having completely turned around. Edwin R. Small, the driver of the car ahead, attempted with his car to pull the plaintiff's automobile out of its position, and, failing in his first attempts, started to put on chains. While assisting Mr. Small the plaintiff was struck by the defendant's car and received the injuries for which the suit was brought.

The plaintiff and Mr. Small on the one side, and the defendant and her mother on the other side were the only persons whose testimony related to the question of liability.

The only knowledge which the plaintiff had as to how the accident occurred was derived from what the defendant told him. Mr. Small testified that he saw the defendant's car from two to four

hundred feet distant toward Lewiston as it approached the scene of the accident but that he did not pay very much attention to it; that he "was partially turned away" from defendant's car and that the next that he remembered "was hearing a crash." He does testify, however, that as the defendant drew near she slowed up considerably and that when she was about fifty feet from the point where the accident occurred she was moving "around fifteen miles an hour." There is nothing in the record to show that he observed the car during the last fifty feet before the collision. On the contrary, according to his own testimony, the "crash" was next in the order of events. As to that phase of the case his information, like that of the plaintiff, came from the defendant.

Given the utmost weight to which it is entitled, the testimony of the plaintiff and that of Mr. Small, as to what they say the defendant said to them as having any possible bearing on the question of liability, amounts to nothing more than that the defendant expressed sorrow and regret over the accident, that the car was new, that she applied the brakes "a little too suddenly," or too heavily, and admitted knowledge that sudden application of brakes is likely to cause skidding.

Assuming its truth, the only force in their testimony lies in the claim that the cause of the accident was the fact that the defendant made a too quick and too hard application of the brakes.

The defendant's testimony as to what happened just before the accident, uncontradicted by that of witnesses or by physical facts, is briefly as follows: That after coming up the grade she saw two automobiles on her left-hand side of the road, one in the ditch and the other about a third in the road; that as she approached the two automobiles she was moving at the rate of from ten to fifteen miles an hour; that she further slowed down as she approached nearer to the two automobiles and that when she arrived almost at the cars she "came almost to a dead stop" because her car began to jump and she had to shift into low gear; that she "struck some kind of a slippery spot" and her car "slid forward a little" and she immediately "put on her brakes, thinking that was the best thing to do"; that her car came alongside of Mr. Small's car and the injury to plaintiff took place. Under cross examination she testi-

fied that up to the time she started to shift into low she "hadn't started to skid or slide"; that she was going ahead until she "slowed right down almost to a stop to change"; that she just got it "shifted in" when she swung her car a little to the right and it skidded; that she went five or six feet after shifting into low before her car skidded; that the car slid down and that, although she could see it was going, she could not stop it though she tried to do so by putting on the brakes after the car started to slide.

Under the facts disclosed by the record, if there were negligence to be found, such finding could be based on no other ground than the application of the brakes. On the facts disclosed in this record, we feel that the jury was not justified in finding that the defendant was negligent. Under the circumstances with which she found herself confronted it was a question of judgment whether or not she should apply the brakes or to increase speed and go ahead. If she used that degree of care which an ordinarily prudent person would have used under the same circumstances and in the same emergency, and in our opinion she did, she was not guilty of negligence and we see nothing in the case to warrant a finding that there was prior negligence on the part of the defendant which continued and brought her into the situation of the emergency.

We are not concerned with consideration of what might have happened or might not have happened if parties had exercised extraordinary care, because such a degree of care is not required. The law does impose a degree of care which is required of the reasonably prudent man, and we feel that the defendant in this case fulfilled that requirement. A verdict can not be based on sympathy, but must be grounded in evidence justifying it.

In this case we are of the opinion that the evidence did not justify the finding of the jury and that the verdict ought not to stand.

In view of this opinion, it becomes unnecessary to consider any other phases of the case.

*Motion sustained.*

BARNES, J. DISSENTING.

I hesitate to file an opinion in disagreement with a major portion of the court, but I am constrained to dissent in this case because,

as I view it, the questions for determination were questions of fact, and, considered as such, they are not unusually intricate or involved.

The jury found for the plaintiff. They must have agreed that plaintiff was not chargeable with contributory negligence.

The sole issue, therefore, was that of negligence on defendant's part.

On this issue there is conflicting evidence, hence, in determining the point, the jury were to decide on which side lay a fair preponderance of the evidence, which to them seemed to have probative value.

When the jury is furnished full narration of the acts of defendant, and description in detail of the physical features of the place where the accident occurred, together with the attending circumstances, it is for them to settle the issue of defendant's negligence.

After verdict, not predicated on fraud, manifest error, delinquency, sympathy, bias, prejudice, or any other false notion that renders reversal necessary, it is not for this court to set aside the verdict because a majority feel they would have arrived at the contrary conclusion if they had been the jury. *Knight* v. *Railroad Co.*, 56 Me., 245.

"We cannot substitute our own impressions for any findings which the jury were authorized to make." *Coombs* v. *King*, 107 Me., 380; *Daughraty* v. *Tebbetts*, 122 Me., 400.

It is also elementary that the jury, and not the court, is to pass upon the credibility of witnesses.

Further, it can not be successfully controverted that as to the condition of a highway at a given time of year, men of the vicinity, otherwise qualified for jury duty, are the finders of fact.

Nor is it probable that a present day jury is not competent to decide what an ordinarily intelligent and admittedly experienced driver of a Ford car must foresee would be the course of his car, when all conditions of roadway and speed are set before them.

The case at bar is not one of a class wherein the corrective power of the court is to be more than ordinarily exercised, typified by cases, collected in Lawrence, Maine Digest, "Evidence," 161.

Before being set aside the verdict in a case such as we have be-

fore us must be shown to be clearly wrong. *Weeks* v. *Parsonsfield*, 65 Me., 286.

It seems to me that in arriving at their conclusion my brethren have overlooked evidence that is uncontradicted; evidence that points unwaveringly to negligence of the defendant.

The jury knew that to a man of ordinary intelligence a thick growth of large pine standing on the southerly margin of a highway that runs eastward, and extending for rods along the way, on the thirty-first of January may be skirted at its foot by ice extending across the roadway; that defendant ran her car for 150 feet on this shaded roadway before reaching plaintiff.

They heard her story and it is not for the Appellate Court to say they must accept as truth all that she stated. They also heard the recital of witnesses as to what the defendant said of her acts and the performance of her car at the time of the accident.

To reject as incredible portions of her testimony, if they did, was within their rights. The opinion presents that defendant's car "slid down" on plaintiff, as though he were below it, on descending ground, but the testimony before the jury was that the road by the spot of the injury was "practically level"; and the slope of the roadway from its right side as defendant travelled was not more than six inches in twenty-two feet, not more than produced by ordinary crowning under good construction, and defendant testified that her car "slid forward a little."

The opinion states, "there was for a little distance a thin coating of ice and snow." But the jury heard a witness state the ice extended "about fifty feet from the western edge of the woods," and it is probable they were not mystified by that language.

I can not concur in the taking from the jury the determination of what occurred or in rejecting their finding of absence of the care that should be exercised under circumstances ordinarily encountered every day on a country road, or to be confronted on any winter day.

STURGIS, J. ALSO DISSENTS.